IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Interlake Steamship Company, *et al.*,  Case No. 3:05CV7312

    Plaintiffs,

    v.  ORDER

American Maritime Officers Union,

    Defendant.

This is a suit to vacate an arbitrator's damage award. Plaintiffs Interlake Steamship Company, *et al.* (ISC) contend Douglas Ray, the arbitrator, exceeded his contractually limited authority when fashioning an award in favor of defendant American Maritime Officers Union (AMO).

Jurisdiction exists under 28 U.S.C. § 1332 and 29 U.S.C. § 185.

Pending are the parties' counter-motions for summary judgment. For the following reasons AMO's motion will be granted and ISC's motion will be denied.

**Background**

ISC are shipping companies which own and operate vessels on the Great Lakes. From August 1, 2000, through July 31, 2003, they and AMO were parties to a collective bargaining agreement (CBA) governing the terms and conditions of employment on ISC ships for licensed engineers, licensed mates, and chief cooks, which AMO represented.[1]

---

[1] Because the employees AMO represented were supervisors, the National Labor Relations Act, 29 U.S.C. § 152, *et seq.*, is inapplicable to this CBA. *Automatic Sprinkler Corp. v. NLRB*, 120 F.3d 612, 619 (6th Cir. 1997).

Over the course of 2002 and into 2003, ISC and AMO attempted to negotiate a renewal of the CBA. AMO had successfully contracted for more advantageous employment terms with two other shipping companies and sought similar concessions from ISC. The plaintiffs resisted those terms, believing their finances would not support them. Those talks, consequently, were unproductive, and on May 15, 2003, AMO gave written notice to terminate the CBA on its expiration, July 31, 2003. ISC accepted that notice on May 28.

Contemporaneous with their negotiations with AMO, however, ISC also had begun negotiating with a different labor organization, the Marine Engineers Beneficial Association (MEBA). The companies negotiated acceptable terms with that union and executed a contract with them on July 25, 2003. That new labor agreement became effective August 1, 2003, the day after the CBA with AMO expired.

ISC informed their employees that they could remain in their jobs under the new bargaining agreement. That contract, however, required all ISC employees, then members of AMO, to become members of MEBA. Immediately after executing the contract, ISC permitted representatives of the new union to board their ships and distribute membership information.

Most of ISC's employees accepted those terms and joined MEBA. Seventeen of them, however, refused to join the new union and left their jobs.

In response to these events, AMO filed a grievance against ISC under the CBA on July 28, 2003. In it they asserted various violations of the CBA, including a breach of ISC's duty to negotiate exclusively with AMO and the unlawful constructive discharge of the seventeen employees who refused to join MEBA.

The parties submitted their grievance for binding arbitration. After four days of hearings, the arbitrator issued a decision in favor of AMO. He awarded the union and the employees back pay for the remainder of the 2003 sailing season as well as for the 2004 sailing season. Significantly, the overwhelming majority of the time frame for that award falls after July 31, 2003, the date the CBA expired. At any time after that date, ISC had the right to terminate any or all of the seventeen employees without cause.

In addition, the arbitrator also awarded the AMO and the employees attorney's fees.

ISC now seek to have the arbitration award vacated, arguing that the arbitrator exceeded his contractual authority in issuing these particular remedies.

### Standard of Review

Courts play only a "limited role" in reviewing an arbitrator's decision. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). It is "the arbitrator's construction of the collective bargaining agreement, not the court's construction, to which the parties have agreed." *Sterling China Co., v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 551 (6th Cir. 2004); *see also Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 599 (6th Cir. 1997) (applying "substantial deference" to arbitrator's interpretation of the contract).

This deference extends to the arbitrator's determination of what remedies the contract provides. *Dispatch Printing Co. v. Teamsters Local Union 284*, 782 F. Supp. 1201, 1206 (S.D. Ohio 1991) (citing *Int'l Brotherhood of Elec. Workers, Local Union No. 1842 v. Cincinnati Elecs. Corp.*, 808 F.2d 1201, 1203 (6th Cir. 1987) ("Deference is particularly appropriate when the arbitrator's choice of remedy is disputed.")).

3

Deference, however, is not appropriate in all situations. A court may vacate an award "when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001) (quoting *United Steelworkers*, 363 U.S. at 597); *see also Raceway Park, Inc. v. Local 47, Service Employees Intern. Union*, 167 F.3d 953, 957 (6th Cir. 1999). Vacature, therefore, is proper where an arbitrator's award: "(1) [] conflicts with express terms of the agreement; (2) [] imposes additional requirements not expressly provided for in the agreement; (3) [] is not rationally supported by or derived from the agreement; or (4) [] is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement." *Sterling China Co.*, 357 F.3d at 556 (quoting *Dallas & Mavis Forwarding Co. v. Local Union No. 89*, 972 F.2d 129, 134 (6th Cir.1992)). However, "[i]f the language of the arbitrable contract is not explicit enough to bar the arbitrator's chosen remedy, the arbitrator's judgment will be respected on review." *AK Steel Corp. v. United Steelworkers of Am.*, 163 F.3d 403, 409 (6th Cir.1998).

## Discussion

In this case, ISC challenge only the arbitrator's specific remedies, not the underlying merits of his decision. The CBA between the parties provides, with respect to remedies, that:

> The arbitrator to whom any grievance shall be submitted will be restricted as to whether any violation of the Agreement, as alleged in the written grievance entered in Step 2 of this procedure exists, and if a violation is found, *to specify the remedy provided in this Agreement*.

Agreement between ISC and AMO, August 1, 2000, Art. XVII, § 1, Step 4 (emphasis added).

The parties dispute the meaning of this provision. ISC assert that this language permitted the arbitrator to select only remedies specifically provided for in the contract. In their view, the arbitrator overstepped his authority by imposing remedies, namely back pay and attorneys' fees, not

4

specified in the CBA. They argue, accordingly, that the awards "conflict[] with the express terms of the agreement . . . [are] not rationally supported by or derived from the agreement . . . [and are] based on general considerations of fairness and equity instead of the exact terms of the agreement." *Sterling China Co.*, 357 F.3d at 556 (internal quotations omitted).

AMO, in contrast, claims this provision's plain language rendered the arbitrator the sole authority concerning what constituted an appropriate remedy. It contends the CBA provided no limits to that discretion and, therefore, that the back pay and attorneys' fees awards are proper.

In their contract, the parties granted the arbitrator, "authority to apply, interpret or determine compliance with the provisions of this Agreement." Agreement between ISC and AMO, August 1, 2000, Art. XVII, § 1, Step 4. While the arbitrator could not add terms to the contract, it did vest him with the power to interpret its language, including the remedies clause. *Id.*

Accordingly, and consistent with that provision, the only issue is whether the arbitrator's determination of whether the remedies provision grants limited or unfettered discretion is "rationally supported by or derived from the agreement." *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 483 (6th Cir. 2006). "If a court can find any [construction of the agreement] that is legally plausible and supports the award then it must be confirmed." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995)). In those circumstances, an arbitrator's interpretation does not "conflict[] with the express terms of the agreement . . . [is] rationally supported by or derived from the agreement . . . [and is not] based on general considerations of fairness and equity instead of the exact terms of the agreement." *Sterling China Co.*, 357 F.3d at 556 (internal quotations omitted).

In this case, there is no question that the arbitrator's reading of the remedies clause was legally plausible. The provision, "*to specify the remedy provided in this Agreement*," is ambiguous and arguably consistent with both ISC's and AMO's readings. Moreover, I find only one specific remedy detailed in the contract, buttressing an interpretation that the remedies provision permitted the arbitrator to fashion his own remedy, rather than limiting him to only those specified in the CBA. Because the arbitrator's construction of that clause is "legally plausible," it is entitled to deference and, accordingly, controlling. *Solvay Pharms., Inc.*, 442 F.3d at 483.

Consequently, both of the arbitrator's awards are valid. He was within his authority to determine that substantial back pay and attorneys' fees were proper remedies under the agreement. This court, accordingly, will not disturb that determination.

## Conclusion

In light of the foregoing, it is, therefore,

ORDERED THAT:

1. AMO's motion for summary judgment shall be, and the same hereby is granted; and

2. ISC's motion for summary judgment shall be, and the same hereby is denied.

So ordered.

                                                    s/James G. Carr
                                                    James G. Carr
                                                    Chief Judge